LOUIS J. MESSANO, PLAINTIFF-RESPONDENT, v. BOARD OF EDUCATION OF THE CITY OF JERSEY CITY, DEFENDANT-APPELLANT.

Argued April 26, 1960—Decided June 6, 1960.

*Mr. John J. Witkowski* argued the cause for the appellant.

*Mr. Isadore Glauberman* argued the cause for the respondent (*Mr. Sheldon A. Weiss,* on the brief).

The opinion of the court was delivered by

JACOBS, J.   The defendant Board of Education of the City of Jersey City appealed from an adverse judgment

entered in the Law Division. We certified the appeal on our own motion while it was pending in the Appellate Division.

Since May 28, 1953 the plaintiff has served as Secretary of the Board of Education in accordance with his appointment by the board under *R. S.* 18:6–27. After serving full-time for three years, he came under the tenure protection of *R. S.* 18:5–51 which provides that no such secretary of a board of education may be dismissed except after hearing and for cause. The defendant does not suggest that any hearing was ever held or that any cause for dismissal exists within the contemplation of *R. S.* 18:5–51. It urges, however, that the plaintiff has not been dismissed but that his services have been lawfully terminated by resolutions which were adopted by the board in 1959 and which provide that the services of all non-instructional employees who are 65 years of age or over are "terminated" and they are "required to apply for any pension for which they may be eligible." As soon as the board's resolutions were adopted the plaintiff filed a complaint in lieu of prerogative writ in which he alleged that he had become 65 years of age before the adoption of the resolutions, that he was not eligible to receive any pension under any pension plan "presently in existence pursuant to statutory authority" and that if the resolutions were intended to apply to him "they are invalid and of no effect." Cross motions for summary judgment were filed in due course. The Law Division granted the plaintiff's motion and entered final judgment which declared that the resolutions, insofar as they purported to terminate the services of the plaintiff as Secretary, were "contrary to law and of no effect." The defendant duly appealed, contending that the board had power to terminate the plaintiff's services and that the Law Division erred in its holding to the contrary.

We are not here concerned with the arguments which have been advanced in favor of and in opposition to mandatory age retirement policies such as that embraced in the board's

resolutions. See 279 *Annals of the American Academy of Political and Social Science* 72 (1952). Nor need we discuss at length the judicial decisions in other states which rest on constructions of their own statutes, although it is significant that most of them take the position that, in the absence of clear and explicit statutory delegation, a municipal body has no power to impose a mandatory age retirement policy on a public employee who is discharging his duties efficiently and is protected by a general tenure enactment. See *State ex rel. Daly v. City of Toledo,* 142 *Ohio St.* 123, 50 *N. E. 2d* 338 (*Sup. Ct.* 1943); *Wilson v. Town of West Haven,* 142 *Conn.* 646, 116 *A. 2d* 420 (*Sup. Ct. Err.* 1955); *Morrison v. Department of Highways,* 229 *La.* 116, 85 *So. 2d* 51 (*Sup. Ct.* 1956); *Bole v. Civil City of Ligonier,* 161 *N. E. 2d* 189 (*Ind. App. Ct.* 1959); but *cf. In re Wallington's Appeal,* 390 *Pa.* 416, 135 *A. 2d* 744 (*Sup. Ct.* 1957); *Boyle v. City of Philadelphia,* 338 *Pa.* 129, 12 *A. 2d* 43 (*Sup. Ct.* 1940). The single issue which requires our attention is whether the New Jersey Legislature has delegated to the board the power to impose a mandatory age retirement upon its Secretary who is serving under the tenure protection of *R. S.* 18:5–51. The board concedes that there has been no clearly expressed delegation from the Legislature but urges that the delegation may be implied from its very general rule-making and appointive powers (*R. S.* 18:6–19; *R. S.* 18:6–27) and the principles recently expressed by this court in *Kennedy v. City of Newark,* 29 *N. J.* 178 (1959). In the *Kennedy* case we upheld a Newark ordinance which required that its employees reside within the city; we found nothing in the history or terms of our statutes to suggest any legislative purpose to exclude from the general delegations of power in *R. S.* 40:48–1 and *R. S.* 40:48–2, the authority to impose reasonable residence requirements which municipal employees may satisfy while continuing in their public employment. In the matter before us the resolutions adopted by the board automatically terminated the plaintiff's public employment without hearing

or showing of cause within *R. S.* 18:5–51; whether a legislative grant to the board to effect such termination may fairly be read into or implied from the board's general rule-making and appointive powers must be considered in the light of the history and terms of other pertinent statutory enactments. See *L.* 1929, *c.* 112—*R. S.* 18:5–68 *et seq.; L.* 1942, *c.* 255; *L.* 1954, *c.* 84—*N. J. S. A.* 43:15A–1 *et seq.; L.* 1955, *c.* 37—*N. J. S. A.* 18:13–112.3 *et seq.; L.* 1955, *c.* 263—*N. J. S. A.* 43:8B–1 *et seq.*

In 1929 the Legislature adopted an act which authorized the establishment and maintenance of a fund for the retirement upon pension of certain employees of boards of education in school districts in first-class counties. *L.* 1929, *c.* 112—*R. S.* 18:5–68 *et seq.* A pension fund was evidently established under this act and in the board's resolution of May 28, 1953 appointing the plaintiff as its Secretary, it directed that his salary be subject to deductions thereunder. It would appear that under *R. S.* 18:5–75 he was obliged to become a member of such pension fund and, for present purposes, he may be justly dealt with as if he had become a member or may still do so. However, *L.* 1929, *c.* 112 did not embody any mandatory age retirement policy, or delegate to the board any authority to adopt such policy, although it did provide for retirement by the board of any employee "who by reason of advanced age, is found unfit for the performance of his duties." See *L.* 1929, *c.* 112, *par.* 9*c,* amended in *L.* 1950, *c.* 339, *p.* 1123; *R. S.* 18:5–79. The board has not found that the plaintiff is unfit to perform his duties and there is no suggestion of unfitness in the record before us.

In 1942 the Legislature adopted "An Act to permit the termination of the employment of employees of school districts who have attained the age of sixty-five years, and providing for the payment of pensions to such employees under certain circumstances." *L.* 1942, *c.* 255. Paragraph 1 of that act provided that the board could terminate the employment of any employee who had attained the age of

65 years "notwithstanding the fact that such employee has or shall have acquired tenure of office or employment by virtue of the provisions of any other law." *L.* 1942, *c.* 255 was expressly repealed by the General Noncontributory Pension Act. See *L.* 1955, *c.* 263, *par.* 6—*N. J. S. A.* 43:8*B*–6. This act provides for retirement on pension, at the discretion of the employer, where the employee has reached the age of 65 years or has completed 40 years of service; but admittedly it has no application to the plaintiff in view of its various provisions, including one to the effect that "no employee shall be eligible for pension benefits other than benefits based upon disability hereunder unless he shall have 15 years of employment continually, or in the aggregate, with the employer." *L.* 1955, *c.* 263, *par.* 5*b*— *N. J. S. A.* 43:8*B*–5. See also *L.* 1955, *c.* 263, *par.* 2— *N. J. S. A.* 43:8*B*–2.

The 1954 Public Employees' Retirement-Social Security Integration Act (applicable mainly to state employees and admittedly inapplicable to the plaintiff) contains express provisions for voluntary retirements of members who have reached the age of 60 and for mandatory retirement of members who have reached the age of 70 "except that any employee reaching 70 years of age may be continued in service from time to time upon written notice to the board of trustees by the head of the department where the employee is employed." *L.* 1954, *c.* 84, *par.* 47—*N. J. S. A.* 43:15*A*–47. And the 1955 Teachers' Pension and Annuity Fund-Social Security Integration Act (applicable to public school teachers and other designated school personnel not including the plaintiff) contains express provisions for voluntary retirements of members who have reached the age of 60 years, for mandatory retirements, upon the request of the employer, of members who have reached the age of 62 years, and for mandatory retirements of members who have reached the age of 70 years "forthwith, or at such time within 1 year thereafter" as the board of trustees deems advisable. *L.* 1955, *c.* 37, *par.* 43—*N. J. S. A.* 18:13–112.45.

We believe that several conclusions as to legislative understanding and purpose may be drawn from the progression of the aforementioned statutory enactments. In 1929, when it adopted its Act relating to the retirement on pension of certain employees of boards of education in school districts in first-class counties, the Legislature did not contemplate that the boards would have the power to impose upon their tenure employees any mandatory age retirement policies unrelated to findings of individual fitness. See *L.* 1929, *c.* 112, *par. 9c—R. S.* 18:5–79. In 1942 it expressly granted such power by providing that the board of education of any school district shall have the power to terminate, with suitable provision for pension, the employment of any employee who attained the age of 65 years and that such power shall exist notwithstanding the tenure rights of the employee. See *L.* 1942, *c.* 255, *par.* 1. But in *L.* 1955, *c.* 263 it withdrew such grant by expressly repealing *L.* 1942, *c.* 255, while failing to replace it with any comparable statutory provision. When the Legislature recently adopted its several comprehensive enactments relating to the retirement of public employees it expressly prescribed its own policies relating to mandatory age retirements. See *L.* 1955, *c.* 37, *par.* 43—*N. J. S. A.* 18:13–112.45; *L.* 1954, *c.* 84, *par.* 47— *N. J. S. A.* 43:15A–47; *cf. L.* 1955, *c.* 263, *pars.* 2 and 4— *N. J. S. A.* 43:8B–2 and 4. These enactments did not apply to the plaintiff who may, for present purposes, be considered as still governed by *L.* 1929, *c.* 112 which, as we have hereinbefore pointed out, did not contain any mandatory age retirement policy or delegate to the board any authority to adopt such policy. We are satisfied that, in the strong light shed by the various legislative enactments embodying specific provisions relating to age retirements, we may not fairly read into or imply from the board's general rule-making and appointive powers, the authority to terminate the plaintiff's services, despite his tenure protection, because he has reached the age of 65. *Cf. State v. Hotel Bar .Foods, Inc.,* 18 *N. J.* 115, 128 (1955); *Hackensack*

*Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157, 165 (1949). See *Wilson v. Town of West Haven, supra; Morrison v. Department of Highways, supra; Bole v. Civil City of Ligonier, supra;* compare *State ex rel. Daly v. City of Toledo, supra,* with *State ex rel. Canada v. Phillips,* 168 *Ohio St.* 191, 151 *N. E.* 2d 722, 730 (*Sup. Ct.* 1958). It has been suggested that the resulting gap is due to a legislative omission which was inadvertent rather than deliberate; while the Legislature may readily do so, we do not, under the circumstances, consider that we are at liberty to supply the omission. See *City Affairs Committee of Jersey City v. Department of Taxation,* 134 *N. J. L.* 198, 203 (*Sup. Ct.* 1946), affirmed 134 *N. J. L.* 614 (*E. & A.* 1946); *cf. Saslow v. Previti,* 17 *N. J. Misc.* 29, 32 (*Sup. Ct.* 1939).

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.